1  Dale J. Giali (SBN 150382)
   dgiali@mayerbrown.com
2  MAYER BROWN LLP
3  350 South Grand Avenue, 25th Floor
   Los Angeles, CA  90071-1503
4  Telephone:   (213) 229-9500
   Facsimile:   (213) 625-0248
5
6  *Attorney for Defendant*
   *AT&T MOBILITY LLC*
7
   **Appearances of additional Counsel and Counsel for each**
8  **Defendant are on Next Page and on Signature Page**
9
10              **UNITED STATES DISTRICT COURT**
11         **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

12  SPH AMERICA, LLC                    Case No. 3:13-cv-2318-CAB-KSC
13         Plaintiff,                   **MEMORANDUM OF POINTS AND**
14      v.                              **AUTHORITIES IN SUPPORT OF**
                                        **DEFENDANTS' MOTION FOR**
15  AT&T MOBILITY LLC,                  **SUMMARY JUDGMENT OF**
                                        **INDEFINITENESS FOR U.S. PATENT**
16         Defendant.                   **NO. 7,443,906**
17
18                                       Date: May 6 – May 8, 2015
19                                       Place: 221 West Broadway, Courtroom 4C
20
21  SPH AMERICA, LLC
22         Plaintiff,
23      v.                              Case No. 3:13-cv-2320-CAB-KSC
24  RESEARCH IN MOTION, LTD,
    D/B/A BLACKBERRY LIMITED
25
           Defendant.
26
27
28

1

2

| | |
|---|---|
| SPH AMERICA, LLC<br><br>       Plaintiff,<br><br>     v.<br><br>HUAWEI TECHNOLOGIES CO.,<br>LTD., et al.<br><br>       Defendants. | Case No. 13-CV-2323-CAB-KSC |
| SPH AMERICA, LLC<br><br>       Plaintiff,<br><br>     v.<br><br>T-MOBILE US, INC.,<br><br>       Defendant. | Case No. 3:13-cv-2324-CAB-KSC |
| SPH AMERICA, LLC,<br><br>       Plaintiff,<br><br>     v.<br><br>ZTE CORP., ET AL.,<br><br>       Defendants. | Case No. 3:13-cv-2326-CAB-KSC |

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   Eric Huang (admitted pro hac vice)
    erichuang@quinnemanuel.com
2   QUINN EMANUEL URQUHART & SULLIVAN, LLP
3   51 Madison Avenue, 22nd Floor
    New York, NY 10010
4   Telephone: 212-849-7000
    Facsimile: 212-849-7100
5

6   Jordan R. Jaffe (Bar No. 254886)
    jordanjaffe@quinnemanuel.com
7   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    50 California Street, 22nd Floor
8   San Francisco, CA 94111
    Telephone: 415-875-6600
9   Facsimile: 415-875-6700

10  *Attorneys for Defendant BLACKBERRY LIMITED*
    *F/K/A RESEARCH IN MOTION LIMITED*
11

12  Callie Bjurstrom (CA SBN 137816)
    callie.bjurstrom@pillsburylaw.com
13  Steven A. Moore (CA SBN 232114)
    steve.moore@pillsburylaw.com
14  Inge Larish (CA SBN 276720)
    inge.larish@pillsburylaw.com
15  Nicole S. Cunningham (CA SBN 234390)
    nicole.cunningham@pillsburylaw.com
16  Richard Thill (CA SBN 236409)
    richard.thill@pillsburylaw.com
17  PILLSBURY WINTHROP SHAW PITTMAN LLP
18  501 West Broadway, Suite 1100
    San Diego, CA 92101-3575
19  Telephone:  619-544-5000; Facsimile:  619-819-4418
20

21  Attorneys for Defendant and Counter-Plaintiff
    ZTE(USA) INC.
22

23  JOSE L. PATIÑO, CA Bar No. 149568
        jpatino@foley.com
24  NICOLA A. PISANO, CA Bar No. 151282
        npisano@foley.com
25  CHRISTOPHER C. BOLTEN, CA Bar No. 268284
        cbolten@foley.com
26  FOLEY & LARDNER LLP
    3579 VALLEY CENTRE DRIVE, SUITE 300
27  SAN DIEGO, CA 92130
    TELEPHONE:    858.847.6700
28  FACSIMILE:    858.792.6773

Attorneys for Defendants and Counter-Plaintiffs
HUAWEI TECHNOLOGIES CO., LTD.,
FUTUREWEI TECHNOLOGIES, INC.
and HUAWEI DEVICE USA, INC.


Dale J. Giali (SBN 150382)
dgiali@mayerbrown.com
MAYER BROWN LLP
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone:   (213) 229-9500
Facsimile:    (213) 625-0248

Amr O. Aly (*pro hac vice*)
MAYER BROWN LLP
aaly@mayerbrown.com
1675 Broadway
New York, NY 10019
Telephone:  (212) 506-2304
Facsimile:  (212) 775-8818

Stephen E. Baskin (*pro* hac *vice*)
MAYER BROWN LLP
sbaskin@mayerbrown.com
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone:  (202) 263-3000
Facsimile:  (202) 263-3300

Edward D. Johnson (SBN 189475)
MAYER BROWN LLP
wjohnson@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone:  (650) 331-2000
Facsimile:  (650) 331-2060

*Attorney for Defendant*
*AT&T MOBILITY LLC*

Michael J. Newton (CA SBN 156225)
mike.newton@alston.com
ALSTON & BIRD LLP
2828 N. Harwood St., Suite 1800
Dallas, TX 7520
Telephone:  214-922-3400
Facsimile:   214-922-3899

Ross R. Barton (*pro hac vice*)
ross.barton@alston.com
ALSTON & BIRD LLP
101 S. Tryon St., Suite 4000
Charlotte, NC 28280
Telephone:  704-444-1000
Facsimile:  704-444-1677

*Attorneys for Defendants T-Mobile US, Inc.*

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................. 1

II.     BACKGROUND .................................................................................. 1

    A.    The '906 Patent ..................................................................... 1

    B.    Prior Proceedings Relating to the '906 Patent ....................... 2

III.    LEGAL STANDARD ......................................................................... 3

    A.    Construction of Means-Plus-Function Terms ......................... 3

    B.    Indefiniteness of Means-Plus-Function Terms ....................... 4

IV.     ARGUMENT ...................................................................................... 5

    A.    Claim 14 is Indefinite Because the '906 Patent Does Not Identify a Structure for Generating a Spreading Factor ....................... 6

    B.    Expert Testimony Cannot Supplant the Absence of Structure .............. 8

    C.    The Term "Evaluating" Should Not Be Conflated With the Term "Generating" ........................................................... 10

V.      CONCLUSION ................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

<u>C</u>ASES

*Atmel Corp. v. Info. Storage Devices, Inc.*,
  198 F.3d 1374 (Fed. Cir. 1999) ............................................................................... 5

*Augme Techs., Inc. v. Yahoo! Inc.*,
  755 F.3d 1326 (Fed. Cir. 2014) .............................................................................. 4

*B. Braun Med., Inc. v. Abbott Labs.*,
  124 F.3d 1419 (Fed. Cir. 1997) .......................................................................... 1, 3

*Biomedino, LLC v. Waters Techs. Corp.*,
  490 F.3d 946 (Fed. Cir. 2007) ........................................................................... 5, 8

*Blackboard, Inc. v. Desire2Learn Inc.*,
  574 F.3d 1371 (Fed. Cir. 2009) ................................................................... 3, 4, 5, 7

*Default Proof Credit Card Sys. v. Home Depot U.S.A., Inc.*,
  412 F.3d 1291 (Fed. Cir. 2005) ...................................................................... passim

*Function Media, LLC v. Google, Inc.*,
  708 F.3d 1310 (Fed. Cir. 2013) ............................................................... 3, 5, 9, 10

*Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*,
  248 F.3d 1303 (Fed. Cir. 2001) .......................................................................... 3, 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120 (2014) ......................................................................................... 4

*Noah Sys., Inc. v. Intuit Inc.*,
  675 F.3d 1302 (Fed. Cir. 2012) .............................................................................. 4

*Omega Eng'g, Inc. v. Raytek Corp.*,
  334 F.3d 1314 (Fed. Cir. 2003) .............................................................................. 9

*Robert Bosch, LLC v. Snap-On Inc.*,
  769 F.3d 1094 (Fed. Cir. 2014) .............................................................................. 9

*Tech. Licensing Corp. v. Videotek, Inc.*,
  545 F.3d 1316 (Fed. Cir. 2008) .............................................................................. 4

*Tomita Techs. USA, LLC v. Nintendo Co., Ltd.*,
  --- Fed. Appx. ----, 2014 WL 6871539 (Fed. Cir. Dec. 8, 2014) .......................... 9

*Triton Tech of Texas, LLC v. Nintendo of Am., Inc.*,
  753 F.3d 1375 (Fed. Cir. 2014) .............................................................................. 4

1

**STATUTES**

2   35 U.S.C. § 112.................................................................................................passim

3   Fed. R. Civ. P. 56....................................................................................................... 4

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OF INDEFINITENESS FOR U.S. PATENT NO. 7.443.906

Defendants[1] respectfully seek summary judgment of invalidity due to indefiniteness of claim 14 of U.S. Patent No. 7,443,906 (the '906 patent).

# I.   INTRODUCTION

The term at issue in claim 14—"spreading factor generation means for generating a spreading factor related to the data rate of the data part"—is a means-plus-function term.  As part of the "*quid pro quo* for the convenience of employing" means-plus-function language, the specification must indicate what structure constitutes the means.  *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997).  The specification of the '906 patent fails to link or associate any structure to the claimed function for the "spreading factor generation means."  As a result, the term is indefinite.

# II.   BACKGROUND

## A.   The '906 Patent

The '906 patent's claims are directed toward converting source data to a channel modulated signal and the use of specific orthogonal codes called orthogonal variable spreading factor (OVSF) codes.  ('906 pat., at Abstract, 1:9-14, 17:58-59, 19:23-24.)[2]  The modulation scheme includes (a) encoding source data to generate data part(s) and a control part for allocation to data channel(s) and control channel, respectively; (b) generating spreading code(s) for allocation to the channels; and (c) spreading the data part(s) and control part with the spreading code(s) to "thereby generate the channel-modulated signal."  (*Id.* at Abstract.)  The purportedly inventive aspect is to use the specific OVSF codes in a model communication

---

[1]  "Defendants" refers to AT&T Mobility, LLC; BlackBerry Limited f/k/a Research In Motion Limited; Huawei Technologies, Co., Ltd., Huawei Device USA, Inc., Futurewei Technologies, Inc.; T-Mobile US, Inc.; and ZTE (USA), Inc.

[2]  *See also* Declaration of Stephen Wicker, Ph.D. at ¶¶ 104-107 (hereinafter "Wicker Decl.").  For additional background on the technology, see the section titled "Technology Background" in Dr. Wicker's declaration (¶¶ 36-103).

1  system.  (*Id.*)  According to the patent, employing these OVSF codes reduces the

2  peak-to-average power ratio (PAPR) of a power amplifier in a mobile

3  communication device.  (*See id.* at Abstract, 1:61-65.)

4          Claim 14 of the '906 patent relates to an "apparatus for converting source data

5  to a channel-modulated signal" and, in relevant part, requires a "spreading factor

6  generation means for generating a spreading factor related to the data rate of the data

7  part."  (*Id.* at 17:58-59, 18:16-19.)

8          **B.     Prior Proceedings Relating to the '906 Patent**

9          The '906 patent was asserted by SPH, and subject to claim construction

10  proceedings, in *SPH America, LLC v. Acer, Inc.*, Case No. 3:09-cv-2535 (S.D. Cal.).

11  In that case, SPH took the position that the term "spreading factor generation means

12  for generating a spreading factor related to the data rate of the data part" should not

13  be construed as a means-plus-function term.  (No. 3:09-cv-2535, Dkt. 534-5 at 4-5,

14  534-10 at 4.)  Instead, SPH asserted that the term refers to a "spreading factor

15  generator" (*id.*),  sidestepping the requirement to identify a structure corresponding

16  to the function for means-plus-function terms.[3]

17          This Court disagreed with SPH's position, holding that the term "spreading

18  factor generation means" should be construed as a means-plus-function term.  (*Id.*,

19  Dkt. 698 at 9.)  Following oral argument regarding defendants' position that this

20  term is indefinite, the Court "reserv[ed] [defendants'] position," stating that the

21  parties could submit briefing on the validity of claim 14.  (*Id.*, Claim Construction

22  Tr. (submitted in support of Defendants' Opening Claim Construction Brief) at

23  223:6-9.)  This Court in particular commented that defendants' argument regarding

24  indefiniteness "has some value."  (*Id.* at 224:1.)  "[W]ithout prejudice to

25  [d]efendants' arguments regarding invalidity" based on indefiniteness, the Court

26  ───────────────

27          [3]  SPH also proposed an alternative construction if the Court decided "spreading
factor generation means" is a means-plus-function term.  (*Id.*)

28

1  identified the function of the term as "generating a spreading factor related to the

2  data rate of the data part" with a corresponding structure of "encoder (110), and

3  equivalents thereof." (*Id.*, Dkt. 698 at 9.)  Consideration of Defendants' argument

4  regarding indefiniteness compels a finding that there is no corresponding structure.

5  ## III.  LEGAL STANDARD

6  ### A.   Construction of Means-Plus-Function Terms

7       "Means-plus-function" claims are subject to Section 112(f), formerly Section

8  112, ¶ 6, which requires that the specification "contain sufficient descriptive text by

9  which a person of skill in the field of the invention would know and understand

10  what structure corresponds to the means." *Function Media, LLC v. Google, Inc.*,

11  708 F.3d 1310, 1317 (Fed. Cir. 2013) (citations omitted).  Construing means-plus-

12  function claims is a two step process, first determining the particular "function of

13  the [claim] limitation" and next determining the "corresponding structure described

14  in the specification and equivalents thereof." *Medtronic, Inc. v. Advanced

15  Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001).

16       The Federal Circuit has instructed that "[s]tructure disclosed in the

17  specification is 'corresponding' structure *only* if the specification or prosecution

18  history *clearly links or associates* that structure to the function recited in the claim."

19  *Id.* (emphases added) (quoting *B. Braun*, 124 F.3d at 1424 ("This duty to link or

20  associate structure to function is the *quid pro quo* for the convenience of employing

21  § 112, ¶ 6.")).  Even if the specification discloses a structure that a person of skill

22  would understand *could* be used to perform the recited function, that is not enough;

23  the specification still must fully disclose and "clearly link" that structure to the

24  performance of the function.  *Id.* at 1311-13.

25       Additionally, corresponding structure "must include all structure that ***actually***

26  ***performs*** the recited function." *Default Proof Credit Card Sys. v. Home Depot

27  U.S.A., Inc.*, 412 F.3d 1291, 1298 (Fed. Cir. 2005) (emphases added).  Further, the

28  identified structure needs to be more than a "black box." *Blackboard, Inc. v.*

*Desire2Learn Inc.*, 574 F.3d 1371, 1382-83 (Fed. Cir. 2009).  The structure needs to be described in detail and not abstraction.  *See id.*

### B.    Indefiniteness of Means-Plus-Function Terms

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Means-plus-function claim limitations must satisfy the definiteness requirements of Section 112(b), formerly Section 112, ¶ 2, which mandate that the specification "particularly point out and distinctly claim" the subject matter of the invention.  *Blackboard*, 574 F.3d at 1382; *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (2014) ("[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention.").[4]  Whether a means-plus-function limitation is invalid for indefiniteness is a matter of law.  *Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008).

A means-plus-function claim is indefinite "if a person of ordinary skill in the art would be unable to recognize the structure in the specification and associate it with the corresponding function in the claim."  *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) (citations omitted).  To determine indefiniteness of

---

[4]  The Supreme Court's decision in *Nautilus* has not vitiated Federal Circuit precedent regarding determinations of indefiniteness for means-plus-function claims.  *See e.g., Augme Techs., Inc. v. Yahoo! Inc.*, 755 F.3d 1326, 1338 (Fed. Cir. 2014) (affirming summary judgment of indefiniteness because "[s]imply disclosing a black box that performs the recited function is not a sufficient explanation"); *Triton Tech of Texas, LLC v. Nintendo of Am., Inc.*, 753 F.3d 1375, 1380 (Fed. Cir. 2014) (affirming indefiniteness determination because of failure to disclose an algorithm for performing the function).  Both the standard in *Nautilus* and Federal Circuit precedent regarding indefiniteness of means-plus-function claims are based on the viewpoint of a person of ordinary skill in the art.

a means-plus-function term, the inquiry "asks first whether structure *is* described in [the] specification, and, if so, whether one skilled in the art would identify the structure from that description." *Default Proof*, 412 F.3d at 1301 (quoting *Atmel Corp. v. Info. Storage Devices, Inc.*, 198 F.3d 1374, 1381 (Fed. Cir. 1999)). Importantly, the requirements of § 112, ¶ 6 cannot be satisfied when there is "a total omission of structure. . . . There must be structure in the specification." *Biomedino, LLC v. Waters Techs. Corp.*, 490 F.3d 946, 952 (Fed. Cir. 2007) (quoting *Atmel*, 198 F.3d at 1382). Accordingly, "the testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification." *Default Proof*, 412 F.3d at 1302; *see also Function Media*, 708 F.3d at 1318.

## IV.   ARGUMENT

The parties agree that "spreading factor generation means for generating a spreading factor related to the data rate of the data part" is a means-plus-function term and that the function of the claim limitation is "generating a spreading factor related to the data rate of the data part."[5]  The dispute is whether the specification of the '906 patent discloses any corresponding structure that is clearly linked to the recited function of generating a spreading factor.  Defendants submit that the specification does not disclose any corresponding structure.  Accordingly, this claim is indefinite, and summary judgment of indefiniteness of claim 14 of the '906 patent should be granted.[6]  *See, e.g.*, *Default Proof*, 412 F.3d at 1303 (affirming grant of summary judgment of indefiniteness).

---

[5]   For convenience, the term will be referred to as "spreading factor generation means" and the function will be referred to as "generating a spreading factor" throughout this brief.

[6]   The asserted dependent claims, nos. 15-18, of the '906 patent are similarly invalid because of the indefiniteness of claim 14.  *See Blackboard*, 574 F.3d at 1382.

| Defendants' Proposed Construction | SPH's Proposed Construction |
|---|---|
| This limitation is indefinite under 35 U.S.C. § 112, ¶ 2.<br><br>This limitation is governed by 35 U.S.C. § 112, ¶ 6. | This is a §112 ¶ 6 claim element. |
| **Function**: "generating a spreading factor related to the data rate of the data part." | **Function:** generating a spreading factor related to the data rate of the data part. |
| **Structure**: There is no corresponding structure disclosure in the '906 Patent that performs this recited function. | **Corresponding Structure:** encoder (110), and equivalents thereof. |

### A.    Claim 14 is Indefinite Because the '906 Patent Does Not Identify a Structure for Generating a Spreading Factor

The '906 patent does not teach one of ordinary skill in the art at the time the patent was filed what structure should be used to generate a spreading factor.[7]  (*See* Wicker Decl. ¶¶ 4, 109-116.)  There is no structure identified in the '906 patent that

---

[7]  Defendants and SPH submit different definitions of a person of ordinary skill in the art (POSITA).  Defendants contend that the proper level of education and experience for a POSITA would be (i) a Masters degree in electrical engineering, computer science, or mathematics, with four years of experience in telecommunications, and two years of that experience being in the field of CDMA communications; or (ii) a Ph.D. in electrical engineering or a related field and one year of experience in CDMA communications.  (Wicker Decl. ¶¶ 32-35.)  SPH contends that the proper level of education and experience for a POSITA is lower and would be a graduate degree in electrical engineering or similar engineering discipline, or a bachelor's degree and two to three years of industry experience.  (Expert Declaration of Dr. Branimir R. Vojcic submitted with the Joint Claim Construction Chart (Dkt. 50-7 in Case No. 3:13-cv-2320) (hereinafter "Vojcic Decl.") ¶ 14.)  Nevertheless, the parties' disagreement over how to define a POSITA does not change the ultimate conclusion that the term "spreading factor generation means" is indefinite.

1   *generates* a spreading factor.  (*See id.* ¶ 111.)  And the '906 specification does not

2   use the term "generating" anywhere with respect to the spreading factor.  The

3   specification fails to "link" or "associate" a structure to the function of generating a

4   spreading factor.  *See Medtronic*, 248 F.3d at 1312 (finding no "corresponding"

5   structure where there was no "clear link or association between the[] structures and

6   the [recited] function").

7         Instead of identifying a structure linked to the function of generating a

8   spreading factor, the '906 patent specification discloses an encoder 110 that

9   "evaluates" the spreading factor.  ('906 pat., at 5:66-67.)  Specifically, with respect

10  to Figure 3, the '906 patent refers to the spreading factor (SF) and explains that

11  "[t]he encoder 110 *evaluates* an SF based on a data rate of the one or more data

12  parts."  (*Id.* (emphasis added).)  Further, a CPU 180, coupled to the encoder 110,

13  "receives" the SF from the encoder 110.  (*Id.* at 6:1-2.)

14        Disclosure of an encoder, within which there is ***another*** structure that can be

15  used to generate a spreading factor, is not sufficient.  *Default Proof*, 412 F.3d at

16  1298 (corresponding structure "must include all structure that ***actually performs*** the

17  recited function" (emphases added)).  An encoder includes a variety of functionality

18  (*see* Wicker Decl. ¶ 113) and there is ***no*** identification of what structure within the

19  encoder *generates* a spreading factor (*see id.* ¶¶ 111-113).  Specifically, there is no

20  identification of what type of structure generates a spreading factor, how the

21  structure operates and is organized, or what logic controls the structure.  (*See id.* ¶

22  111.)  The spreading factor must be generated from some specific structure (*see id.* ¶

23  113), but the encoder is merely a "black box" that evaluates the spreading factor and

24  then sends the spreading factor to the CPU.  The disclosure of a "black box" encoder

25  provides no clues as to the structure within the box that performs the function.  (*See

26  id*. ¶¶ 112-113.)  This is not a sufficient disclosure.  *See Blackboard*, 574 F.3d at

27  1382-83 (affirming indefiniteness where the specification solely disclosed a "black

28

1  box that performs a recited function" "by some undefined component of the

2  system").

3          SPH cannot cite to any structure in the '906 specification that is linked to the

4  function of generating a spreading factor.  SPH's declaration from Dr. Vojcic

5  submitted with the Joint Claim Construction Chart cites to portions of the

6  specification identifying that the encoder "evaluates an SF" and that the CPU

7  "receives the SF related to the one or more data parts from the encoder."  (Vojcic

8  Decl. ¶ 55.)  But there is no citation to any structure that "generates" a spreading

9  factor.  (*See* Wicker Decl. ¶ 111.)  Dr. Vojcic also opines (¶ 55) that claim 14

10  "indicates that the 'spreading factor generation means' is included in the 'channel

11  coding means,' which is the encoder (110)."  This suffers from the "black box"

12  problem because even if the "spreading factor generation means" is within the

13  encoder, there is absolutely ***no*** disclosure of the structure performing the function.

14  (*See* Wicker Decl. ¶¶ 112-113.)  The term "spreading factor generation means" is

15  indefinite because of this failure to properly "link" the corresponding structure to the

16  claimed function.  *Default Proof*, 412 F.3d at 1299 ("To meet the definiteness

17  requirement, structure disclosed in the specification must be clearly linked to . . . the

18  function claimed.").  Accordingly, summary judgment of indefiniteness should be

19  granted.  *See id*.

20          **B.      Expert Testimony Cannot Supplant the Absence of Structure**

21          To determine indefiniteness of a means-plus-function term, the inquiry "asks

22  first whether structure is described in [the] specification."  *Id.* at 1301.  Here, there

23  is no structure described in the specification for generating a spreading factor, in

24  direct contradiction of the requirement that "[t]here must be structure in the

25  specification."  *Biomedino*, 490 F.3d at 952.  Because of the "total omission of

26  structure," the requirements of the § 112, ¶ 6 tradeoff cannot be satisfied.  *Id.* at 948,

27  952 (affirming indefiniteness determination because of "no corresponding structure

28  described in the specification").

SPH attempts to extricate itself from the failure to identify a structure by submitting Dr. Vojcic's declaration opining that "[o]ne of skill in the art would understand . . . that the '906 patent discloses encoder (110) as performing the function of generating a spreading factor related to the data rate of the data part." (Vojcic Decl. ¶ 56.)  As an initial matter, this opinion should not be considered because it is not supported by the express language of the specification.  *Default Proof*, 412 F.3d at 1300, n. 2 (not relying on expert's testimony "unsupported . . . by the express language of the written description").  Nor does Dr. Vojcic declare that the encoder is "***all*** [the] structure that ***actually performs*** the recited function."  *Id.* at 1298 (emphases added).

In any event, with the inventors having come up short by failing to provide any disclosure of the structure for "generating a spreading factor," "the testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification."  *Id.* at 1302.  Specifically, Dr. Vojcic's declaration cannot be used to "rewrite[s] the patent's specification" and "fill in the gaps" for a link that simply is not there.  *Function Media*, 708 F.3d at 1319 (patentee "cannot rely on the knowledge of one skilled in the art to fill in the gaps" after "fail[ing] to provide any disclosure of the structure"); *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1332 (Fed. Cir. 2003) ("Omega submits its expert declarations . . . to rewrite the patent's specification and explicitly provide for the laser splitting device, lenses, and prisms to strike the center of the energy zone.  That we cannot accept.").[8]

---

[8]  *See also Tomita Techs. USA, LLC v. Nintendo Co., Ltd.*, --- Fed. Appx. ----, 2014 WL 6871539, *4 (Fed. Cir. Dec. 8, 2014) (unpublished) ("[E]xpert testimony cannot gloss over the total absence of structure in the cited portion of the specification."); *Robert Bosch, LLC v. Snap-On Inc.*, 769 F.3d 1094, 1100 (Fed. Cir. 2014) (finding that because the disclosures of the means-plus-function terms "are solely functional, one of ordinary skill in the art could not find in the specification a definition of the terms as referring to a particular structure").

1    Because there is no structure identified, one of ordinary skill in the art could

2 not perceive any "clear link" and testimony cannot supplant the total absence of

3 structure. *Function Media*, 708 F.3d at 1319; *Default Proof*, 412 F.3d at 1302.  The

4 inventors could have written claim 14 by identifying a structure, without using

5 means-plus-function language.  Alternatively, the inventors presumably could have

6 identified a structure corresponding to the means-plus-function language.  But this

7 was not done.  The failure to abide by the "*quid pro quo*" requiring the specification

8 to indicate the corresponding structure requires invalidation.  *See Default Proof*, 412

9 F.3d at 1298.

10    **C.    The Term "Evaluating" Should Not Be Conflated With the Term**

11       **"Generating"**

12    Even if Dr. Vojcic's attempt to conflate "generating" (as used in the claims)

13 and "evaluating" (as used in the written description) is considered, it must fail

14 because these terms were given no special meaning and are *not* synonymous.  The

15 word "generating" means "[t]o bring into being" or "to bring into existence."

16 (Wicker Decl., ¶ 114, Exs. B, C.)  The word "evaluating," although used in the

17 specification, is used in ordinary parlance, and typically refers to analyzing

18 something that is already known.  (*Id.* ¶ 114.)  Thus, the '906 specification describes

19 that encoder 110 "evaluates" the spreading factor, but does not associate any

20 structure for "generating" the spreading factor.  Because evaluating and generating

21 are different actions, SPH's attempt to enlarge—and thus distort—the disclosed

22 "encoder" as something that "generates" spreading factors related to the data rate of

23 the data part is contrary to the English language and the '906 specification.

24    One of skill in the art at the time the patent was filed would not associate the

25 term "evaluate" with any structure for performing the claimed function of

26 "generating" the spreading factor because evaluating and generating are simply

27 different actions.  (*Id.* ¶¶ 114-115.)  One of skill in the art would understand

28 "evaluation" of a spreading factor to entail some sort of analysis of a known

spreading factor.  (*Id.* ¶ 115.)  "Generation" of a spreading factor, on the other hand, would entail the creation of a spreading sequence that has a length defined by the spreading factor.  (*Id.*)  Because "evaluating" and "generating" are different actions, one of skill in the art at the time of the alleged invention would not equate evaluation and generation, leaving the '906 patent without any structure linked to the claimed function.  (*Id.*)

V.    **CONCLUSION**

       For all the reasons stated above, Defendants respectfully submit that the Court should grant summary judgment of invalidity due to indefiniteness of claim 14 of the '906 patent.

Dated:  March 20, 2015                    Respectfully submitted,

                                          QUINN EMANUEL URQUHART
                                          & SULLIVAN LLP

                                          By:  */s/ Kevin P.B. Johnson*
                                          Kevin P.B. Johnson (Bar No. 177129)
                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
                                          555 Twin Dolphin Drive, 5th Floor
                                          Redwood Shores, CA 94065
                                          Tel: 650-801-5000
                                          Fax: 650-801-5100

                                          *Attorneys for Defendant BlackBerry Limited*
                                          *f/k/a Research In Motion Limited*

                                          FOLEY & LARDNER LLP

                                          By:  */s/ Jose L. Patiño*
                                          Jose L. Patiño, CA Bar No. 149568
                                          Nicola A. Pisano, CA Bar No. 151282
                                          Christopher C. Bolten, CA Bar No. 268284
                                          *Attorneys for Defendants and Counter-*
                                          *Plaintiffs HUAWEI TECHNOLOGIES CO.,*
                                          *LTD., FUTUREWEI TECHNOLOGIES, INC.*
                                          *AND HUAWEI DEVICE USA, INC.*

1

PILLSBURY WINTHROP SHAW
PITTMAN LLP

2

3

By:   _/s/ Nicole S. Cunningham_
Nicole S, Cunningham CA Bar No. 234390
Callie A. Bjurstrom CA Bar No. 137816
Steven A. Moore CA Bar No. 232114
Inge Larish CA Bar No. 276720
Richard W. Thill CA Bar No. 236409
*Attorneys for Defendant and CounterPlaintiff*
*ZTE (USA) INC.*

4

5

6

7

MAYER BROWN LLP

8

9

By: _/s/ Dale J. Giali_
Dale J. Giali (150382)
*dgiali@mayerbrown.com*
350 South Grand Avenue, 25th Floor
Los Angeles, CA  90071-1503
Telephone:  (213) 229-9500
Facsimile:  (213) 625-0248

10

11

12

13

Amr O. Aly (*pro hac vice*)
*aaly@mayerbrown.com*
mailto:1675 Broadway
New York, NY 10019
Telephone:  (212) 506-2304
Facsimile:  (212) 775-8818

14

15

16

17

Stephen E. Baskin (*pro* hac vice)
*sbaskin@mayerbrown.com*
1999 K Street, N.W.
Washington, D.C. 20006-1101
Telephone  (202) 263-3000
Facsimile: (202) 263-3300

18

19

20

Edward D. Johnson (SBN 189475)
*wjohnson@mayerbrown.com*
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, CA 94306-2112
Telephone (650) 331-2000
Facsimile: (650) 331-2060

21

22

23

24

*Attorneys for Defendant*
*AT&T MOBILITY LLC*

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ALSTON & BIRD LLP

By:  */s/ Michael J. Newton*
Michael J. Newton (CA SBN 156225)
ALSTON & BIRD LLP
2828 N. Harwood St., Suite 1800
Dallas, TX 75201
Tel.:  214-922-3400; Fax:  214-922-3899
mike.newton@alston.com

Ross R. Barton (*pro hac vice*)
ALSTON & BIRD LLP
101 S. Tryon Street, Suite 4000
Charlotte, NC  28280
Telephone (704) 444-1000
Facsimile (214) 444-1677
ross.barton@alston.com

*Attorneys for Defendants T-Mobile US, Inc.*

1

## **CERTIFICATE OF SERVICE**

2    The undersigned hereby certifies that a true and correct copy of the above and

3  forgoing document has been served on March 20, 2015 to all counsel of record who

4  are deemed to have consented to electronic service via the Court's CM/ECF system

5  per Civil Local Rule 5.4.  Any counsel of record who have not consented to

6  electronic service through the Court's CM/ECF system will be served by electronic

7  mail, first class mail, facsimile and/or overnight delivery.

8

9    MAYER BROWN LLP

10

11    By: _/s/ Dale J. Giali_
     Dale J. Giali (150382)
12    _dgiali@mayerbrown.com_
     350 South Grand Avenue, 25th Floor
13    Los Angeles, CA  90071-1503
     Telephone:  (213) 229-9500
14    Facsimile:  (213) 625-0248

15

16

17

18

19

20

21

22

23

24

25

26

27

28